## STATE EX REL. KAISER v. A. E. AKINS, AUD.

1. INTERPRETATION OF STATUTES.

Where the intention of the legislature .is not clear and the construction which should be given to a statute is a matter of doubt, the court, in interpreting its provisions, may take into consideration the construction which has been adopted by the public officials, whose duty requires them to act under the statute in the transaction of public business.

2. INTERPRETATION OF THE ACT OF APRIL 12, 1889, 86 O. L., 264.

Reasonable doubt existing as to the true construction of the Act of April 12, 1889, 86 O. L., 264, relating to the salary of the county auditor, the interpretation given to the law by that official and his predecessors will be adopted by the court.

3. SALARY OF AUDITOR OF CUYAHOGA COUNTY—HOW DETERMINED.

The salary of the auditor of Cuyahoga county is to be determined by taking into account, both the Act of April 12, 1889, 86 O: L., 264, and Secs. 1069 and 1070, Rev. Stat. ·

APPEAL.

MARVIN, J.

The case of the State of Ohio on relation of P. H. Kaiser, County Solicitor, against Albert E. Akins, auditor of Cuyahoga county, is now before us. Akins is the auditor of Cuyahoga county. For his services as such officer, he is entitled to be paid as provided by the statutes of the state.

He claims that the amount to which he is entitled, is made up in part, by taking into account the provisions of secs. 1069 and 1070, Rev. Stat. Acting upon this view, he has made out and presented to the commissioners of said county a claim for $1,387.23 for the month of July, 1898, and the same was approved and allowed by said commissioners, and he was about to draw said sum as a part of the fees, costs, percentages, penalties and other allowances and perquisites accruing to his said office as such auditor.

This action is brought to restrain and enjoin the defendant from drawing his warrant upon the county treasurer for any amount in favor of himself as auditor, in which shall be included any sum made up of the allowances mentioned in said section.

The act regulating the pay to which the present auditor of Cuyahoga county is entitled, is found in 86 O. L., 264, and passed on April 12, 1889.

The first section of this act provides for a salary of twenty-five hundred dollars to be paid to the auditor.

The fourth section provides that one-half of all fees, costs, percentages, penalties, allowances and other perquisites which are now or may hereafter be allowed by law shall be for the sole use of the county; the remaining one-half shall be disposed of as provided in sec. 10. This last section (sec. 10), provides that in addition to the salary provided for in sec. 1, the officer shall have all that shall remain of one-half of the fees, costs, percentages, penalties, allowances and perquisites accruing to his office,

after deducting therefrom an amount equal to one-half the salaries paid to the assistants in his office. The fees, etc., which are so to be divided, into two equal parts, are provided for in different sections of the statute and made up of different items.

Section 1096, Rev. Stat., provides that county auditors shall receive as compensation per annum for their services a certain amount based upon the male inhabitants of the county above the age of twenty-one years.

Section 1070, Rev. Stat., provides that the several county auditors shall receive compensation for their services in addition to that provided for in sec. 1069, Rev. Stat., and this is also based upon the number of male inhabitants of the county above the age of twenty-one years.

The entire controversy in the present case is as to whether the auditor of this county is entitled to the benefits of the provisions of these two sections: That is, in estimating the "fees, costs, percentages, penalties, allowances and perquisites accruing to his office," one-half of which, after deducting an amount equal to one-half the salaries paid to the assistants in his office, such officer is to have as a part of his compensation.

Until an act was passed by the legislature in 1888 found in 85 O. L., 69, the auditor was paid entirely in fees including this compensation provided for in secs. 1069 and 1070, Rev. Stat.

By the act of 1888 it was provided that the auditor should be paid an annual salary of five thousand dollars, and that this should be the only compensation which he should receive.

The fifteenth section of this last-named act (85 O. L., 69), reads: "Any provision of statute in force when this act takes effect which conflicts with any provision of this act, shall, to the extent that it is inconsistent with the latter, and not otherwise, be held to be superseded by this act as to counties described herein; but other provisions of statute so in force relating to county officers and county affairs shall not be affected by this act.

It will be noticed that nothing has been said about the compensation of other officers in this act; but the later act provides as well for the compensation of other officers as well as of the auditor. But since it is only the compensation of the auditor which is being considered, we have spoken of the acts as they affect the compensation of county officers.— (Auditors.)

This statute was never acted upon and in 1889 the statute hereinbefore referred to as that under which the present auditor is to be paid, was passed. The repealing section reads exactly as that in the statute of 1888.

Attention has already been called to section 4 of this act, in which it seems to be clearly required of the auditor to *collect,* as he had before done, all fees, costs, percentages, penalties, allowances and other perquisites which are now or may be hereafter allowed by law for the performance of official duty.

Unless the collection by him of the compensation provided for in secs. 1069 and 1070, Rev. Stat., would be in conflict with some provisions of the statute of 1889, or that such compensation is not included in the words "All fees, costs, percentages, penalties, allowances or other perquisites," it would seem to be his duty still to collect it, for it is only where the provisions of statutes in force when the latter act took effect,

conflict with the provisions of this act, that the former are superseded. It is true that such conflicting provisions are superseded to the extent that they are inconsistent. But it will be observed that the language of the section is not that inconsistent provisions are superseded but that conflicting provisions are superseded to the extent that they are inconsistent. It does not seem clear that there is a conflict between the provisions of secs. 1069 and 1070, Rev. Stat., on the one side and the provisions of the act of 1888 on the other, even if it be held that the compensation provided for in these two sections, is included in the words, already quoted, in the fourth section of the latter act, though it might be an idle thing to draw money from the treasury which should be immediately returned thereto.

In any event the legislature seems, by the enactment of 1889 to have intended to entirely supersede the act of 1888—no mention or reference is made to it in the later act; it seems to be treated as though it had never existed, and as it never went into operation at all, at least so far as the auditor is concerned, it would seem as though it might well be treated in considering his rights as though it had never been, so treating it, and construing the act of 1889 without any reference to the act of 1888, and all appearance of conflict or inconsistency growing out of making the collections of this compensation and paying it again into the treasury disappears.

It is urged, however, that the compensation, provided for in secs. 1069 and 1070, Rev. Stat., is not included in the words "All the fees, costs, percentages, penalties, allowances and perquisites accruing to his office."

Were it not for the fact that to allow both the salary provided for in the act of 1889, and also to allow this compensation, would seem to entitle the officer to draw from the treasury, on two separate claims, neither of which is on account of fees allowed for any specific service, it would hardly seem reasonable to say that where one has received "All the fees, and all the costs and all the percentages and all the penalties and all the allowances and all the perquisites accruing to his office;" he would still be entitled to receive additional pay, such would not be the ordinary construction of language, nor does it seem probable that such was the intention of the legislature in the use of these words in any of the statutes under consideration.

It must be conceded that the means of determining the pay of the auditor under the act of 1889, is not entirely clear. There is, and well may be, doubt, as to whether what was intended by the legislature, should be included in secs. 4 and 10 of the act, and such doubt, reasonably existing as to the true construction to be given to the statute, the court feels justified in inquiring into the practical construction given to this and similar statutes by those officers whose duty it is to practically administer the public business under these statutes.

The act 1889 was passed on April 12, and in November of the same year the auditor was elected by the county and held office for three years. During all that incumbency, he and the other officers, whose duty it was to administer the law, thus construed the statute to include the compensation allowed by secs. 1069 and 1070. Rev. Stat.

In November, 1892, another auditor was elected and he held the office for three years and during his entire incumbency all the officers whose duty it was to administer the statute with reference to the compensation of the auditor of the county, so construed the statute.

In 1895, the present auditor was elected and he had been in office about two years when his right to take into account in determining what pay he should receive,—the compensation allowed by secs. 1069 and 1070, Rev. Stat.,—was questioned.

It would manifestly be a very much greater hardship to the auditor to have the construction, now placed upon the statute which by the petition it is sought to have placed upon it, than it would have been if placed upon it before the auditor entered upon the duties of his office.

Evidence shows that the compensation of the auditor would be very greatly reduced by giving the construction claimed for it on the part of the plaintiff in this action. It is true that there would be left a compensation equal to that of some of the other officers of the county and greater than that of many county officers in other counties.

But the present auditor accepted the office and entered upon the discharge of its duties with the knowledge that during the six years preceding his taking the office, the construction by all the officers of the county, whose duty it was to administer the law had been such as the auditor now claims it should be. Presumably, he has acted upon the understanding that his compensation would be such as it is, under the construction which he claims and which had been acted upon during the six years in which the law had been in force preceding his acquisition to the office.

We think this should have some weight in the determination of the case. But in addition to the construction which has been given in this county, we have what has been done in Hamilton county.

In 1870 an act was passed as to the compensation of officers of Hamilton county, which act is found in 67 O. L., 36, and the first section of that statute provides, in almost exactly the words of secs. 4 and 10 of the act under which the present auditor of this county receives his compensation; that is to say, it uses the words "All fees, costs, percentages, penalties," etc., substantially the same words that are used in the statute applicable to this county. It provides for a fee fund into which, monies collected by the auditor for fees, costs, percentages, penalties, etc., shall be paid and out of that fund he shall receive a compensation of five thousand dollars.

Various amendments to that statute were passed, none of which need be considered here. But in 1879 when the statute revising the statutes of the state, was enacted, which was on June 20, 1879, this section, sec. 1341, Rev. Stat., was enacted. That was, by its terms, applicable both to Cuyahoga and Hamilton counties. As to Cuyahoga county, it has, by the statutes, been repealed or superseded. It is, however, still in force in Hamilton county.

Section 1341, Rev. Stat., reads: "The fees, costs, percentages, penalties, allowances, and all other perquisites of whatever kind, which, by law, the clerk of the courts, probate judge, sheriff, either as such, or as special master commissioners, or receiver in any case, treasurer, auditor, recorder, and coroner, in Hamilton county, may always receive and collect for any official as rendered, shall be received and collected by said officers respectively, for the sole use of the treasury of said county as public monies belonging to it, and shall be accounted for and paid over as such in the manner hereinafter provided."

Section 1345, Rev. Stat., provides: "After deducting from the whole amount of the costs, fees, percentage, penalties, allowances, and

State ex. rel. Kaiser v. Akins.

perquisites collected by said officers collectively during each year, the amount allowed and paid for the compensation of deputies, clerks, book-keepers, and other necessary expenses of said officers each shall be allowed to receive an annual compensation for his services out of the costs, fees, percentages, allowances, perquisites and penalties so collected and paid into the fee fund in Hamilton county, as follows: 'And among those salaries paid out to said officers, there shall be paid to the auditor the sum of five thousand dollars.' "

The evidence establishes here that the construction which has been given to these statutes applicable to Hamilton county by the officers whose duty it was to administer those statutes from the time of the en-actment of the last statute down to the present time, to include in the "fees, costs, percentages, penalties, allowances, and other perquisites," this compensation provided for in secs. 1069 and 1070, Rev. Stat. If the statute were clear that the compensation provided in secs. 1069 and 10'0, Rev. Stat., was not to be included, the court would not feel justified in resorting to the practical construction which has been given to these and to the statutes relative to Hamilton county, in determining what construction to give. But, since, as we have said, we regard it as a mat-ter of doubt as to what the intention of the legislature was, we feel justi-fied in so looking to the practical construction which had been given to these and similar statutes.

We feel justified in doing this, by authorities cited to us in brief of counsel, especially in case of The United States v. Healey, 160 U. S., 136. The last clause of the syllabus in that case reads as follows:

"When the practice in a department in interpreting a statute is uni-form, and the meaning of the statute upon examination, is found to be doubtful or obscure, this court will accept the interpretation by the de-partment as the true one." * * * * *

It should be said that the statute under consideration, which was being construed, was the statute as to the public lands, at what rate or price such lands might be sold, and whether the land spoken of as desert lands which might be acquired for a price less than other lands, would include such desert lands when they are found among the alternate sec-tions of lands which had been donated by the government for the con-struction of public enterprises,—of railroads and other public enterprises; in this case, railroads.

The language used by the court is: "If, prior to the passage of the act of 1891, the interior department had uniformly interpreted the act of 1877 as reducing the price of alternate reserved sections of land along the lines of land-grant railroads, being desert lands, from $2.50 to $1.25 per acre, we should accept that interpretation as the true one, if, upon examining the statute we found its meaning to be at all doubtful or obscure."

State v. City Council of Camden, 58 N. J. Law, 515, the question being considered was, whether under the charter of the city of Camden, an ordinance, which had not been read in full three times before its pas-sage, had become a lawful ordinance of the city. The charter provided that before an ordinance should be adopted, it should be read three times in the council. The ordinance, being considered, had been read, not three times in full, but it had been read by its title on the third occasion, if not on more than one occasion. The language of the statute provid-ing for three readings was if not in the exact words, substantially in the

words of the constitution of the state of New Jersey. The constitution of the state of New Jersey provided that all legislative enactments should be read three times in the legislature before being adopted.

The court says, in passing upon the Camden case, because that the construction given to that provision of the constitution by the legislature for a long series of years, was that the statute might be read by its title only, and that such construction having been given to it by the legislature of the state, the court will give the same construction to this charter of the city of Camden.

Section 309, Sutherland's Statutory Construction, justifies, as we think, the course here adopted. And for the reasons stated, the petition for the plaintiff will be dismissed.

*P. H. Kaiser,* counsel for plaintiff.

*Wilcox, Collister, Hogan & Parmely* and *Phillips & Phillips,* counsel for defendant.